May it please the Court, my name is Vincent Chan and I represent Jeannette Wang, the defendant and the appellant in this matter. I would request two minutes to reserve for rebuttal. In argument on this appeal from denial of a § 2255 petition, I want to focus on two is direct rather than a collateral consequence of the conviction, and number one, whether or not affirmative misadvice, as opposed to a failure to advise, constitutes an ineffective assistance of counsel. Starting with the first point, it really doesn't matter whether something is direct or collateral. As St. Cyr has recognized and Resendez in this State has also recognized, defendants do rely on immigration information and advice given to them by their attorneys. But the circuit precedent says it does make a difference whether it's direct or collateral effect. Well, then let me turn to my second point, then, Your Honor. In Frye, the distinction between Frye in this case is, number one, Frye deals with commencement of removal proceedings. That is something that is committed to the discretion of the Attorney General under the statute that I've cited in the brief, and in fact, judicial review is also precluded under 1252, I believe it is, also by statute. Here we're talking about something that's commitment to removal proceedings, excuse me. The other talking about mandatory detention. It's very clear that the result of mandatory detention flows directly and automatically from the conviction. I would like to talk a little bit more. Well, it flows directly and automatically from the conviction, assuming removal proceedings have been begun. Without removal proceedings, there's no automatic detention. I would disagree, Your Honor. The mandatory detention applies automatically upon, normally, the end of the person's sentence in the Bureau of Prisons. She, in this case, is detained. But in the absence of any removal proceedings that have begun, the automatic detention does not begin. Isn't that right? No, Your Honor. I would disagree again. The purpose of the mandatory detention is to serve the ends of the removal proceeding. That's right. But whether the Attorney General institutes a removal proceeding or not, in this case, Ms. Wang or any alien who's convicted of an aggravated felony is subject to mandatory detention. And the reason I'm saying that is because the Attorney General were not to institute removal proceedings but take her into mandatory detention. Nonetheless, the mandatory detention proceeds by statute automatically and is mandatory whether or not there is a removal proceeding. There are two different statutes that address two different issues, related, obviously, because the purpose of mandatory detention is to effect a removal proceeding. I did want to touch briefly, though, that the line of cases, Amador, Leal, and the Turry case, which looked at this concept of automatic and direct, I think that is actually a very good description of the best way to differentiate between direct and collateral consequence. The language of the case, though, suggests that anything outside of what is ordered by the district court judge is automatically a collateral consequence. And consequently, cases such as Frye talk about the involvement of the Attorney General. Putting aside the fact that, in this case, the United States Attorney who works for the Attorney General is both the one who put my client into criminal proceedings and then put her into removal proceedings and also put her into the I would point out that when the district court judge sentenced Ms. Wang to incarceration, Judge Piaz did not come down off the bench, slap the cuffs on her, and take her back to his house. Rather, that, too, was relegated to the custody, she was relegated to the custody of the Bureau of Prisons, which is an agency outside the court's jurisdiction, although in the court's power. So what I'm suggesting to the court is that when it looks at the idea of an automatic and their consequence, it should not take this formulaic definition and look instead at the practical effect. When my client was convicted and she pled, she was committed to the Bureau of Prisons, violated the authority of the district court judge, and just as surely by that same sentence of the district court judge, by operation of law and operation of statute, she would then be subject to mandatory detention. And that would be whether or not removal proceedings were instituted at a later date. This is a, you say that she's subject to mandatory detention as a, as a consequence of her plea of, of a consequence of her conviction. That's one mandatory detention. But there's a second mandatory detention, and that's under the O'Reiher statute, pending removal, maybe we're talking about two different times of mandatory detention. There are actually two periods, Your Honor. There is one that's been a subject of a number of cases, which is the 90-day period following removal proceedings in which the Attorney General has that period of time to incarcerate and then remove someone who has the order of removal pending. That's after the entry of the order of removal, right? Prior to removal, and whether or not there are removal proceedings instituted, there is, as a practical matter, an immigration hold which is put on every person who's an aggravated felon that is known to be an aggravated felon. And that is mandatory detention, which proceeds by statute, whether or not there are removal proceedings instituted. Can you help me with the Strickland IAC question? In what respect was the advice deficient? And more important, from my, in terms of my understanding of the case, where's the prejudice? Well, the prejudice, let me, let me work back with you. The prejudice is that my client made a deal so she could stay with her children and her husband. It's a quid pro quo. She gave up her right to a trial, which is her constitutional right. But she didn't get the benefit of her bargain. Now she's not only suffered extra incarceration as a result of mandatory detention, but she's going to be taken away from her family. Well, she was told specifically, though, that she may have that consequence. It may have an effect. In other words, she wasn't told for certain that it's going to have that consequence, but she was put on notice, wasn't she, that she could be removed. And that really is the first point I was trying to make, Your Honor. There's a difference between a failure to advise and misadvice. If I was to say no, we're talking about prejudice now. In other words, there is a difference. You're correct. But talking in terms of prejudice, if someone tells you, look, don't walk down that corridor because it may be dangerous, then you're put on notice that you don't want to go down that corridor because you might get hit over the head or whatever. And there's a difference between saying you will definitely be hit over the head if you go down there. But in either event, where's the prejudice? You know that if you walk down that corridor, you have a problem. And your client knew she had a problem. She didn't know the extent of the problem. But she certainly knew that she could have an immigration problem. I agree with that, Your Honor. But the difference is that there's a difference between a stranger who tells you that you might walk down the street and might be hit on the head versus someone who's duty-bound by law in our Constitution, the Sixth Amendment, to tell you not just that something might happen to you, but that you are going to get a certain penalty. Now, what is it that the lawyer said you might have trouble with that you're saying in fact it's a guarantee that it's going to happen? What is it that turns out to be a guarantee? What specific thing is it that you're interested in? The conviction of an aggravated felony essentially is a death penalty of immigration. There is no statutory relief from it. The only way that my client could possibly have avoided removal, given the conviction for aggravated felony, if she had qualified, not under asylum law, she would have to seek restriction on removal, which is a much higher level. So what you're saying is the actual consequence of which her defense lawyer should have warned her and said this will happen to you is not the pre-removal detention, but the removal itself? That's what he should have told her about? He should have given her full advice, Your Honor. Once he undertook to advise her rather than to ignore her or simply say go see an immigration lawyer, he led her down the wrong path. He didn't say you will be removed. He said you could be removed. He didn't say you will be subject to mandatory detention. He said, you know, you might have some problems with citizenship. You could get deported. That's not the case. And it was not sufficient for him to say, listen, I'm not an immigration lawyer. You better talk to an immigration lawyer also. That would have been sufficient. However, that's the difference between a failure to advise and the difference between that and affirmative misadvice. Let me ask a different question that goes back to prejudice, and this requires some speculation. I'm not quite sure what to do with the uncertainty inherent in speculation. Is it remotely possible that she would have got a better deal? Meaning, it looks to me as though the government had her dead to rights. And the only question is whether or not they go to trial and hammer her or they give her a plea bargain and hammer her. Well, I would say that trial, in fact, would actually have been quite an excellent prospect for her. She was the wife of a husband who worked for the person who was actually the lead criminal in this matter. So she's number three down the line. What her involvement was, in fact, for example, had she been charged with and been convicted of aiding and abetting, she would then not be convicted of an aggravated felony, but instead be then able to seek cancellation and removal, which, given her husband and her three children, was a very realistic and probable event. Instead, she's not going to be convicted of an aggravated felony. Had she been here for 10 years, would she have otherwise qualified for cancellation and removal? She's been here pretty much enough time for that, is my understanding from the record, that had she qualified for aiding and abetting or some other kind that's not an aggravated felony, she wouldn't be able to apply for cancellation and removal. And are her children United States citizens? Yes, they are, as is her husband. You can't deny, though, that she knew that she had a problem. She didn't know the extent of the problem, but she certainly knew she had an immigration problem by pleading. She absolutely did, which is why she went to her lawyer and said, tell me what's going to happen to me in immigration. All right. After she spoke to the lawyer, she knew that she didn't know she was definitely going to get deported, but she knew she could get deported, did she not? Yes, she did. And she didn't seek any further assistance because of the nature of the attorney's misadvice. He did not tell her clearly and concisely, look, you're going to be deported. But she knew she could be deported. Yes. All right. So where's the prejudice? If she knew she could have been deported. In other words, you have a situation where either she would have known for sure that she was going to be deported or she was told that she could be deported. Under the attorney's advice, she knew she could be deported. And she didn't seek any further advice from him or anyone else. I see my time is squared if I can respond. Go ahead. Go ahead. Yes. In state court, if you are charged with pimping, there is a mandatory three-year minimum sentence, no ifs, ands, or buts about it. Now, if I go to my lawyer and say, if I plead to pimping, am I going to go to jail? And he says, well, you could go to prison. That's misadvice. She was misled by her attorney, who should have told her, you're going to get deported. There's pretty much no chance of relief. Isn't it more proper to say she wasn't misadvised? She just wasn't advised to the full extent of the law. She was told that she could have a problem. And that problem could be being deported. She wasn't told for certain that she, but she knew that she could face deportation, didn't she? Yes, Your Honor, and that's the difference, is that an attorney's failure to advise his client to the fullest extent of the law is the difference between having the existence of counsel and having the assistance of counsel. What is it, but in terms of prejudice for the individual defendant in a criminal court, can you, I mean, I don't know that you could say for certainty that if she would have known that for certain she was going to be deported, she would have gone to trial when, in fact, she pled guilty knowing that she could be deported. And acknowledging that possibility, she thought enough of it, number one, to ask her attorney, because obviously her family and her immigration consequences were a material factor. And the fact that she asked means, I would say, that a very reasonable inference that it is material, her decision to give up her right to trial and to accept a guilty plea. Even though she knew by doing that she could go to, she could be deported. Well, her attorney said, this is what I have here, I inform Mrs. Wang that a conviction in this case could affect her ability to obtain U.S. citizenship, and that she could even be deported. I further told Mrs. Wang that it was difficult to anticipate exactly what the INS would do, and that there were no guarantees regarding her immigration status. I also advised her to consult with an immigration attorney if she had any further questions regarding her immigration status. That's what the lawyer testified to. And taking those as it were, that is pretty much the affirmative misdivice. Number one, he should have told her that she would be deported instead of could. Number two, when he says there's no guarantee as to what the INS is going to do, all he had to do is read the statute to see that it's an aggravated felony, and once she's convicted of the aggravated felony, she's subject to mandatory deportation. He undertook to give her advice and was negligent in the way he gave that advice. Not only negligent, but he cost her her right to trial and possibly a different plea bargain. And that's why she's not getting the benefit of her bargain, based on a misunderstanding of the law that her attorney, who's bound by law to advise her on, that he gave her misleading advice that made her believe that there was hope and there was a possibility, in fact, of some sort of reunion with her husband and her children. So she took a deal to get four months of home arrest following four months of conviction. What happened to the husband? He went to prison, I believe, for one year and was ultimately released. And he's a citizen, so he's not going to get removed? Yes, the husband and children are all citizens, Your Honor. I see, so. Thank you. May it please the Court, Greg Lesser for the United States. The Court has identified the issue in this case. What the defense characterizes as affirmative misadvice is a little unclear, because the advice that was given in this case was, in fact, what happened. The defense counsel, even according to the defendant's version of events, said that she was advised that her immigration status could get complicated. Yeah, but you know, like lawyers tell their clients all the time, you know, this could happen, that could happen. We could go to trial and you could lose. We could go to trial and you could get convicted and be executed. A lot of things could happen. And the important thing is that the counsel put her on notice of this possibility. Yeah, but these are poor people. You know, as a practical matter, she's not going to go run around and find herself an immigration lawyer. And if she did, that immigration lawyer, probably nine times out of ten, wouldn't know what the law was anyway. So, I mean, where is she? Sounds like more of a general problem with the bar, Your Honor. No, it's a general problem with the whole system, not the bar. Well, Your Honor, given the... You know, you can practice before an immigration judge, an immigration court, if you're a disbarred lawyer. Did you know that? I did not. Well, it's an administrative proceeding, I suppose. Yeah, just call down there. They'll tell you that. They'll tell you a disbarred lawyer is better than no lawyer. Your Golden Retriever could practice before an IJ. What did you say? Your Golden Retriever could practice. Yeah. Well, I'd have to remember that if I had an immigration. I'd have trouble getting charged that much. You can't say for sure, though, can you, that if this defendant would have known that deportation was a certainty, that she would have pled guilty? No, we cannot say for certain, Your Honor. But we can look at the evidence, which is... Well, the evidence is that she was told there's no factual finding, but just between what the lawyer claims and what she claims, she was put on notice that there could be some problem. Let's put it that way. But isn't there a big difference between there could be a problem and that you're absolutely going to be out the window if you plead guilty? There is certainly a difference between it when if deportation was as important as she claims. And isn't that misadvice by telling someone you could when the truth of the matter is you should have said you are going to be deported? No, Your Honor, I don't think that is misadvice. I think misadvice is a good characterization of misadvice. Well, you know, like you go, when I was in the Marine Corps, they said, you could be killed, but I'm here, right? Well, you could have been. If they'd have said, you will be killed, well, I might be thinking about other things, you know, I mean, hope springs eternal. That's true. But then, of course, deportation, though being a near certainty, was not an absolute certainty for this defendant. Going into deportation proceedings were certainly, but as defense counsel mentioned, there are ways, there are ways, yes, unlikely, but ways in which she could have avoided deportation. Well, is your best argument here that she wasn't prejudiced because she had some notice, even if not total notice of the consequences? I wouldn't say that's the best argument. I think that's one of several. So what's your best argument? Your best argument can't be that she wasn't misled to some extent. Well, Your Honor, I think, well, that is certainly one of the arguments that I think is a good argument. In this case, after being advised by her counsel that she could have immigration problems, whether you take her version or his version of events, she stands before the district court, and I'm looking at page 11 of the defense excerpt of records. Ms. Wang, by the way, since you're not a United States citizen, have you considered any possible impact this plea agreement may have or your plea to the charge would have? A conviction for this charge would have on your immigration status in this country. Have you considered that, defendant, without the interpreter? Yes. So, obviously, she at least is saying under oath before the district court that she's considered it. Yeah, but the district court say, well, you're going to be deported, period, and you're going to be incarcerated, period. I don't, the district court couldn't have said that, and I don't think even her own attorney could have said, period, you will be with certainty. I think that would have been misadvice. You can't, what the lawyer has to do is say, this is, look, this is a possibility, a likely possibility. Why would that have been misadvice to say, it is a certainty that you will be removed? Perhaps, say if she went through deportation proceedings and was successful in showing an exception. And what exception was available to her? The exception that was mentioned previously, not the asylum, but, I'm sorry, the, I've forgotten the term. Well, you could sludge it, you could say it's almost a certainty. Nothing in life is, they always say almost or. Yeah, she might die first, she's not going to get removed, okay. That's, but, Your Honor, that's true. I mean, an attorney has to tell her, the attorney has to give, put her on notice of the fact that this is a possibility. But the fact remains, a possibility is very different from a certainty or a virtual certainty. And the truth is, it was a virtual certainty. That is to say, the chances are extremely, extremely high that she is going to end up being removed. That's fair to say. Is it enough for the defense lawyer to say, well, I'm a criminal defense attorney, and I can advise you as to this stuff. But, you know, I don't know immigration law well enough to be sure. Is it enough for him to discharge his responsibilities to say, go find yourself a lawyer to advise you as to this other consequence? Well, I mean, under our binding case law, it is. Under amateur or leal, that's specifically what the issue was, a failure to advise as far as immigration consequences. And is it enough for him to say, there may be a consequence and you may wish to consult? Or for him to say, there may be a consequence and you darn well better consult if you have a brain in your head? Meaning, there are various ways to suggest consulting another lawyer. One of them is, you'd better do it. Another one is, well, you may want to think about getting another lawyer to look at this. Well, and on the facts of this case, under both sets of facts, under what the defense counsel said and under what the defendant's claims, she was advised, look, this could get complicated. How difficult would it have been for the government to prove its case if it had gone to trial? Well, we would have expected to get a conviction in this case. She's the number three person down the line, the wife of the husband of the, you're going to get a conviction? There were a lot of instances of conduct. I mean, this was a multi-count, I believe it was a nine count indictment. She fled to a superseding information, charging one count. Right. In other words, you let her off, you know, recognizing, I'm not quite sure what, but you let her plead a fairly small amount here. We, what we did was we capped her, the exposure of her loss, the loss amount also at $5 million that was attributable to her actions. Did you handle this? I did not. Well, did the U.S. attorney who handled it know at the time they took the plea what the, what consequences were highly probable? As far as immigration? Yeah. I couldn't say one way or the other, Your Honor. I would assume that she would have, but I couldn't say for certain. And she just stood there silently as this all unfolded, huh? Well, there, well, listening to the district court judge saying, have you considered the immigration consequences? And the defense and the defendant standing up and saying, yes, I have. But considered only means he said, I might want to think about it, and I thought about it. But it doesn't mean that she knew that she was going to get deported. What happened to the kingpin? The kingpin? That, I know the individual was convicted. I don't know the sentence, Your Honor. Okay. But in this case, I don't think it's fair to characterize it as affirmative misadvice, like in the Resendez case where the defendant was told, you won't have any problems with immigration. And that was an attorney who obviously didn't know what he was talking about, who stepped out of an area of criminal law and stepped into immigration law and asserted that he knew what would happen with regard to immigration. But you can't claim that this was correct advice, though, can you? That her immigration status would become complicated? I would say that it is correct. It did become complicated. Well, she did have problems. Well, when you say it could be complicated, that means it could and it could not. When the truth of the matter is, as Judge Fletcher put it, it's a virtual certainty she was going to be deported. That is true. So, no, it's not misadvice by saying you could have a problem and when you really should be saying you've got a big, big problem. As far as a question of the reasonableness of the advice, the advice I still would contend is within reason. It puts her on notice that there is a problem. But if she was told it was a virtual certainty, she might have gotten a trial. She might have, but the problem is when she stands before the district court and says that she has considered it and she's been told that there may be problems with immigration. I'll bet the district judge didn't even know about this consequence. The person, you know, it was virtually, you know, going to happen that she'd be deported. But it's also not within the district court's purview. Her arrangement by pleading guilty, her deal is between the government, the district court, and herself. Those are the parties involved. What the INS does, and this is clear, of course, in Ninth Circuit case law as well. Well, I didn't know about this until I got involved in this case. About the immigration consequences? Yeah. In the 96 acts? Yeah. Yeah, they've become much more automatic. However, since those acts, the Ninth Circuit has held in the Amador Leal case that they still remain collateral consequences. But that's not the important thing in this case. The important thing in this case are the facts of this case, that she was put on notice of the fact that there could be immigration consequences. And by the way, it's undisputed that her attorney told her that she should consult with an immigration attorney. He did not pretend to know immigration law himself. He said, look, you've got to consult with an immigration attorney. That's not contradicted by the defendant. Thank you, Your Honor. Your Honor, if I could request one minute? Sure, go ahead. I want to clarify that before my client could seek, under the UN Convention Against Torture or Restriction on Removal, that the immigration judge would have to first find her removable, which, as I pointed out, was pretty much an automatic consequence of this matter. The final point I want to make is that every criminal case, the magistrate, district court judge is going to tell someone who's pro se, whether or not he has an attorney or not, that he's got certain rights, the right to trial, the right to witnesses, so on and so forth. The reason why we have the Sixth Amendment is that someone recognized a long time ago that people who are pro se are going to have problems understanding these rights and understanding the consequences of their actions. And that's why we have Mr. Blatt as the attorney from his wing. He's supposed to guide her through the system and give her advice. If he said nothing, or if he said to her, go see an immigration attorney, we'd be talking about a failure to advise. But he didn't tell her nothing. He didn't tell her just go see an immigration lawyer. He told her that, and he lulled her into believing him because then he went off and told her a bunch of things that were completely wrong. So therefore, she was subject to removal, and she was subject to mandatory detention. And because of that, she gave up her family to plead guilty. And I would submit that that's an ineffective assistance of counsel that justifies relief. Thank you. Thank you. Matter will stand submitted. We'll call the next item on the calendar, U.S. versus Michael Anthony Bliss. Good morning, Your Honor.
judges: Pregerson, Cowen , W. Fletcher